**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

CARL STANLEY TURNER                                                                                PLAINTIFF

VS.                                          2:12CV00136-DPM-JTK

RAY HOBBS, et al.                                                                                   DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     Introduction**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 46), to which Plaintiff has responded (Doc. No. 51).

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, while incarcerated at the Ouachita River Unit of the Arkansas Department of Correction (ADC).[1] He alleges retaliation and violations of due process with respect to his placement in administrative segregation (ad seg) and punitive isolation from May 5, 2010, until October 31, 2011, while incarcerated at the East Arkansas Regional (Max) Unit (EARU) (Doc. No. 2, p. 5.) Specifically, Plaintiff claims he was continuously confined in punitive isolation for 125 days without any relief or privileges. He asks for monetary and injunctive relief from Defendants.

---

[1] Plaintiff notified the Court of his release from incarceration on November 25, 2013 (Doc. No. 49).

2

**II.     Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135, quoting FED.R.CIV.P. 56(e), and Celotex, 477 U.S. at 324. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Webb, 144 F.3d at 1135.

**A.     Defendants' Motion**

Defendants initially ask the Court to dismiss Plaintiff's monetary claims against them in their official capacities based on sovereign immunity. Next, they state that the claims against Defendants Hobbs and Burl should be dismissed because they are based on their supervisory positions or their responses to his grievances, which are not constitutional violations. Plaintiff's due process allegations do not support a constitutional claim, according to Defendants, because he cannot show that his housing assignment imposed an atypical and significant deprivation on him in relation to

3

the ordinary incidents of confinement. And, even if Plaintiff can show this, Defendants state they are protected from liability by qualified immunity, because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Finally, Defendants state Plaintiff's retaliation claim should be dismissed as unsupported by any evidence.

**B.     Plaintiff's Response**

Plaintiff states Defendants retaliated against him for the filing of his claim and failed to follow ADC rules and procedures requiring 48-hour relief periods at the end of each thirty-day isolation sentence. Finally, Plaintiff asks the Court to deny Defendants' Motion and to permit him to present witness testimony at trial.

**C.     Analysis**

   **1.     Sovereign Immunity**

Initially, the Court agrees with Defendants that Plaintiff's damages claims against them in their official capacities should be dismissed, pursuant to sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997).

   **2.     Respondeat Superior**

The Court also agrees with Defendants that Plaintiff's allegations against ADC Director Hobbs and Warden Burl should be dismissed. In his Complaint, Plaintiff alleges that he "took the matter to Warden Burl...and the entire matter was never investigated by him nor his office." (Doc. No. 2, p. 6.) As evidence, he attaches copies of grievances he submitted, which were initially responded to by Defendant Burl. (Id., pp. 14-19.) However, a grievance response or denial of a

grievance does not state a substantive constitutional claim. Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002).

Similarly, Plaintiff's allegation against Defendant Hobbs is that he "took this matter to Director Ray Hobbs, and his office, but he took no action of correcting this serious matter..." (Doc. No. 2, p. 8.) However, Plaintiff does not attach evidence, such as correspondence or other documents directed to Hobbs, and does not clarify how he communicated his allegations to him. Therefore, it appears to the Court that Plaintiff sued Hobbs based on his supervisory position as Director of the ADC. Absent any allegations of direct personal involvement in an issue, however, the general responsibility for supervising a prison is not sufficient to support liability. See Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Therefore, these two Defendants should be dismissed.

### 3. Retaliation

Plaintiff also fails to provide any evidence to support his allegation of retaliation. In his Complaint, he states that Defendant Ball retaliated against him on June 17, 2010 during a classification hearing when Plaintiff was assigned to ad seg "without justifyable causes." (Doc. No. 2, p. 7.) He does not, however, identify the motivating factor for the adverse action he alleges, and his claim should be dismissed as speculative and conclusory. Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996).

### 4. Due Process/Qualified Immunity

Defendants also argue that they are entitled to the protection of qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In Sandin v. Connor, the United States Supreme Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. 515 U.S. 472 (1995).[3] Recognizing, however, that states may themselves create certain protected liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528, quoting Pearson v. Callahan, 555 U.S. at 236.

[3]In Hewitt v. Helms, the United States Supreme Court recognized that prisoners do not have an inherent right to remain in general population. 459 U.S. 460, 468 (1983).

Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Following Sandin, the Eighth Circuit Court of Appeals held in Kennedy v. Blankenship, that an inmate's demotion from ad seg to punitive isolation was "not the sort of deprivation that qualifies as 'atypical and significant.'" 100 F.3d 640, 642 (1996).

In this particular case, Plaintiff does not allege that he has been denied the procedures required for reviewing and maintaining his classification in ad seg.[4] Rather, he claims that he was required to stay in punitive for 125 days without relief or privileges. Although Plaintiff initially states in his Complaint that the incidents at issue occurred on May 5, 2010, and "exasperated into the year of October 13, 2011," the specific allegations of the Complaint cover the time period from May, 2010, through November, 2010. (Doc. No. 2.)

In support of their Motion, Defendants provide copies of Plaintiff's status assignment sheets and disciplinary records during that time, which show that Plaintiff was charged with disciplinary violations on May 5, 2010, July 6, 2010, July 9, 2010, and twice on August 2, 2010. (Doc. No. 48-2). The status assignment sheets show that following the May 5, 2010 disciplinary conviction, Plaintiff was assigned to punitive isolation for thirty days. (Doc. No. 48-1, p. 5.) He received an administrative review on June 14, 2010, and was assigned to ad seg on June 17, 2010. (Id.) This sequence of events is further explained in the response to Plaintiff's grievance appeal, EAM-10-02274, where Defendant May notes that Plaintiff was released from punitive on June 6, 2010, but placed on administrative review until he appeared before the unit classification committee for possible assignment to ad seg, which was made on June 14, 2010. (Doc. No. 2, p. 16.)

---

[4]As noted later, Defendants do provide, however, records of his periodic classification reviews. (Doc. No. 48-1, pp. 2-5.)

Plaintiff remained assigned to ad seg until his second disciplinary conviction, on July 20, 2010, (for the July 6, 2010, and July 9, 2010 charges), at which time he was sentenced to punitive isolation for thirty days and fifteen days, respectively. (Doc. Nos. 48-1, p. 6, 48-2, p. 1.) He was again convicted on August 10, 2010, and August 11, 2010, and sentenced to thirty days punitive isolation on each of those charges. (Doc. Nos. 48-1, p. 4.) He was placed on administrative review on November 6, 2010, and assigned to ad seg confinement on November 11, 2010. (Id.) After this time, his class status changed twice, on January 5, 2011, and February 2, 2011, and he received classification reviews, on December 15, 2010, March 30, 2011, April 6, 2011, May 4, 2011, July 6, 2011, August 3, 2011, August 31, 2011, September 28, 2011, October 5, 2011, and October 13, 2011. (Id., pp. 6-7.) On October 13, 2011, Plaintiff transferred to the EARU. (Id., p. 7.) During this time, Defendants' records also reflect that Plaintiff received 48-hour relief periods on August 20, 2010, September 19, 2010, and October 21, 2010. (Id., p. 4.)

Defendants also provide the declaration of Defendant Ball, the Deputy Warden of EARU Max, who states that during the time period at issue in the Complaint, inmates who were assigned to punitive isolation could have received their 48-hour relief period without being moved to another location. (Doc. No. 48-6, p. 1.) In addition, during this time the ADC was "transitioning" to paperless inmate records, and input mistakes could have been made with respect to references in Plaintiff's bed assignment sheet. (Id.) He also offers that "inmates often confuse punitive isolation, administrative review, and administrative segregation housing assignments because an inmate can be assigned to all three without moving cells," and "[o]nce an inmate finishes his punitive time, he may be held on administrative review until the next available classification review....Inmates may be housed in their isolation wing cell while on review status, but they are given more privileges than

8

while on punitive status." (Id.)

In Sandin, the Court stated that in determining whether an inmate's restrictions are atypical and significant, courts should consider the effect of the segregation on the length of confinement, the extent to which the conditions differ from other routine prison conditions, and the duration of the segregation. 515 U.S. at 484. In this particular case, Plaintiff complains about a 125-day period of confinement. Even assuming the truth of his allegation (despite the overwhelming evidence provided by the Defendants to the contrary, which is not rebutted by Plaintiff), the Court finds that such did not violate Plaintiff's due process rights. In Rahman X v. Morgan, the court found that twenty-six months in ad seg, absent proof of punitive hardships, was not an atypical or significant deprivation so as to violate due process. 300 F.3d 970, 973-4 (8th Cir. 2002). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003), where the court held the absence of contact visitation, exercise privileges, and chapel rights for thirty-seven days was not an atypical and significant hardship.[5]

Aside from the length of time Plaintiff allegedly spent in punitive confinement, he does not specify any other conditions which the Court could consider when determining whether his confinement was atypical and significant, other than to say that he was without property and privileges. (Doc. No. 2, p. 7.) Absent more specific allegations concerning the conditions of

---

[5] See Wycoff v. Nichols, 94 F.3d 1187, 1188 (8th Cir. 1996), where the court upheld ten days of disciplinary detention and 100 days in a maximum security cell; and Moorman v. Thalacker, 83 F.3d 970, 971 (8th Cir. 1996), where the court upheld fifteen days of high level disciplinary detention, followed by 107 days of less-restrictive disciplinary detention. The Third Circuit Court of Appeals held that administrative confinement for fifteen months was not an atypical and significant hardship, in Griffin v. Vaughn, 112 F.3d 703, 706 (1997). And the Sixth Circuit Court of Appeals did not consider ad seg confinement for two and one-half years to be an atypical and significant hardship, in Jones v. Baker, 155 F.3d 810, 813 (1998).

confinement, or evidence to counter that provided by the Defendants which show three 48-hour relief periods and periodic changes from punitive to ad seg, the Court finds that Defendants are entitled to qualified immunity. The facts alleged or shown, construed in the light most favorable to the Plaintiff, do not establish a violation of a constitutional or statutory right, and the actions of the Defendants were reasonable under the circumstances. See Pearson v. Callahan, 555 U.S. at 232.

### III. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 46) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 20th day of December, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE